IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL WILLIS, JR.                                                                                       PLAINTIFF

vs.                                          CIVIL NO. 05-4024

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

## MEMORANDUM OPINION

Michael Willis, Jr. (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were filed on April 16, 2003, alleging an onset date of February 18, 2003, due to an inability to read and write, comprehension problems, poor memory, tiredness, weakness, and behavior problems. (Tr. 59-61, 80, 99, 179-180). An administrative hearing was held on September 14, 2003. (Tr. 204-226). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on September 14, 2003, plaintiff was forty-nine years old and possessed a high school education. (Tr. 17). The record reveals that he had past relevant work ("PRW"), as a janitor, hand packer, painter's helper, and construction laborer. (Tr. 17).

On October 4, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff's impairments were non-severe. On February 22, 2005, the Appeals Council declined to review this decision. (Tr. 5-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year

2

and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

In the present case, the ALJ concluded that plaintiff's impairments were non-severe. An ALJ may consider an impairment to be non-severe only if a claimant's medical impairments are so slight

3

that it is unlikely he or she would be found to be disabled even if their age, education, and work experience were taken into account. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the vocational analysis." *Id*. at 158.

The relevant medical evidence reveals as follows. On June 2, 2003, plaintiff underwent a psychological examination by Dr. C. Yates Morgan. (Tr. 127-130). Plaintiff complained of blurred vision and occasional shortness of breath. (Tr. 128). He reported that he was applying for disability benefits because a friend told him that people who could not read or write were able to receive financial assistance. (Tr. 127). Dr. Morgan noted that plaintiff was not overtly uncooperative, but that he put little effort into responding to test items. The results of his I.Q. test were inconsistent with plaintiff's reported education and work history. As such, they were not considered valid. Further, his mental status examination revealed an individual who did not suffer from depression, psychosis, or undue anxiety. (Tr. 130).

Plaintiff told Dr. Morgan that he had dropped out of school his senior year because he was failing. (Tr. 127). However, he reported taking regular classes and getting along with his teachers and peers. In spite of his education, plaintiff stated that he could not read, and was unable to write anything beyond his name. Further, plaintiff told Dr. Morgan that his past employment consisted of work at a paper mill, a tire plant, and driving a cement truck. (Tr. 127-128). He indicated that he had been fired from the paper mill and tire plant due to conflicts with supervisors and/or fellow employees. (Tr. 128).

4

Dr. Morgan noted that plaintiff possessed clear thoughts and an intact memory. (Tr. 130). Further, plaintiff did not appear to be suspicious of the motives and intentions of others. Dr. Morgan concluded that plaintiff seemed to possess the ability to understand, remember, and carry out instructions, as well as deal with a reasonable amount of work pressure. However, plaintiff did seem to have difficulty in responding appropriately to co-workers and supervision. Dr. Morgan then assessed plaintiff as having a global assessment of functioning score ("GAF"), of sixty-two, which is indicative of only mild symptoms. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 34 (4th ed. 2000). (Tr. 130).

On August 4, 2003, plaintiff underwent a general physical examination. (Tr. 131-137). Although no physical abnormalities or evidence of psychosis were noted, the doctor did report that plaintiff could not remember the month or the year. (Tr. 136).

On October 13, 2003, plaintiff underwent an initial clinical interview at Southwest Arkansas Counseling and Mental Health Center. (Tr. 140-145). Records indicate that he complained of low mood; feelings of sadness; and, loss of interest, energy and enthusiasm. (Tr. 140). He stated that, at times, he was explosive and experienced uncontrollable outbursts. However, plaintiff reported that he was not taking any medications. (Tr. 142). Warren Smith, a licensed social worker, noted that plaintiff's motor behavior was slow and lethargic, he had rapid/pressured speech, his mood was irritable, his affect/attitude was angry/hostile, his thought content was preoccupied, his attention was distracted, and his memory was impaired. (Tr. 143). He estimated plaintiff's I.Q. to be below average. As such, Mr. Smith diagnosed him with mood disorder, not otherwise specified, rule out

5

malingering. Further, he assessed plaintiff with a GAF of forty-eight. (Tr. 144). A GAF of forty-eight indicates the presence of serious symptoms or a serious impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 34 (4th ed. 2000)

On November 3, 2003, Mr. Smith reported no change in plaintiff's condition. (Tr. 152). Plaintiff reported an inability to find work, and stated that he continued to experience dizzy spells. He also complained of mounting expenses, with no way to pay his bills. Plaintiff stated that he was at a loss because of his inability to read and write. As such, Mr. Smith encouraged plaintiff to contact the literacy program. (Tr. 152).

On January 9, 2004, no significant changes were noted. (Tr. 170). Plaintiff told Mr. Smith that he had applied for SSI, stating that he had significant medical problems. Records indicate that his depression continued to be a problem. (Tr. 170).

On February 26, 2004, plaintiff was treated by Dr. Sanjeev Singhal, a psychiatrist. (Tr. 177-178). Plaintiff complained of depression, anxiety, auditory hallucinations, low energy, loss of interest, irritability, and headaches. (Tr. 177). However, when probed further regarding his symptoms, plaintiff provided no specific information that would validate his symptoms. As such, Dr. Singhal concluded that plaintiff's symptoms were "really not convincing." He noted, however, that there was a possibility that plaintiff was suffering from psychotic symptoms. (Tr. 178). Accordingly, Dr. Singhal diagnosed plaintiff with a deferred diagnosis of rule out major depressive disorder, anxiety, and psychotic disorder. Because his symptoms did not seem legitimate to Dr.

6

Singhal, he did not prescribe any medications. Instead, he asked plaintiff to continue seeing Mr. Smith, and to follow-up with Dr. Singhal's office in a couple of months. (Tr. 178).

On March 4, 2004, Mr. Smith again documented no significant change in plaintiff's condition. (Tr. 176). Plaintiff reported periodic depression with anger outbursts, and maintained that he was unable to work, due to his physical and medical problems. Mr. Smith noted that plaintiff described a "lonely existence." Further, plaintiff complained of being unable to see a doctor for his many complaints. However, the record does not indicate why plaintiff was unable to see a doctor. (Tr. 176).

On April 22, 2004, plaintiff had his second appointment with Dr. Singhal. (Tr. 175). After reviewing notes from plaintiff's session with Mr. Smith, Dr. Singhal noted that plaintiff's depression and irritability complaints remained constant. As such, he prescribed Prozac. (Tr. 175).

On June 24, 2004, plaintiff's thought process was noted to be logical and resistant. (Tr. 173). Notes indicate that his depression was evidenced by decreased energy, impaired sleep, and constricted interaction. As such, there had been no significant change in his condition. Plaintiff indicated that he could not work because he could not stand being around people. (Tr. 173).

On July 19, 2004, plaintiff saw Dr. Oladele Adebogun, a psychiatrist. (Tr. 171). Dr. Adebogun noted that plaintiff had been seeing Dr. Singhal for anxiety and depression. He also indicated that plaintiff had been diagnosed with high blood pressure, deteriorating vision, dyslexia, and tension headaches. Plaintiff reported that he had fallen as a child, and continued to have knots on the back of his head. However, he denied experiencing seizures. Further, plaintiff denied

7

AO72A
(Rev. 8/82)

experiencing suicidal/homicidal ideations. He acknowledged that he did have "explosive moods," and had been involved in multiple altercations. Plaintiff reported feeling anxious when people "act a fool around him." Although he had remained compliant with his medication, plaintiff indicated that it had not really helped him. As such, Dr. Adebogun advised plaintiff to increase his dosage of Prozac, and prescribed Depakote and Geodon to control his unstable mood. (Tr. 171). Geodon is a medication used to treat schizophrenia and manic and mixed episodes associated with bipolar disorder. *See* PHYSICIAN'S DESK REFERENCE, p. 2515 (60th ed. 2006). Depakote is also used to treat mania associated with bipolar disorder. *See* PHYSICIAN'S DESK REFERENCE, p. 429 (60th ed. 2006).

This same date, counseling progress notes indicate that plaintiff continued to report problems with irritability, impaired sleep, and withdrawn behavior. (Tr. 172). The counselor noted that plaintiff had difficulty identifying and verbalizing his feelings. (Tr. 172).

On November 4, 2004, plaintiff was evaluated by Dr. John Jamerson. (Tr. 194-196). Following an interview with plaintiff, Dr. Jamerson concluded that plaintiff's symptoms indicated the presence of psychosis with underlying paranoia and delusions of persecution. (Tr. 196). Plaintiff reported experiencing both auditory and visual hallucinations. (Tr. 194). Dr. Jamerson noted that chronic and severe health problems, anxiety, illiteracy, and probable dyslexia exacerbated the delusional elements of plaintiff's illness, and predisposed him to anger and violence. (Tr. 196). During the interview, plaintiff admitted to having a fairly extensive criminal background, to include shootings, stabbings, and general assaults. (Tr. 195).

Dr. Jamerson was of the opinion that plaintiff was an unlikely candidate for psychiatric

8

intervention, due to his suspiciousness and history of medical non-compliance. (Tr. 195). Plaintiff reported an unwillingness to take psychotropic medication for fear that it would hurt his heart. Therefore, Dr. Jamerson diagnosed plaintiff with schizophrenia, paranoid type; panic disorder with agoraphobia; and, a reading disorder. (Tr. 196). He then indicated that plaintiff had a GAF of thirty-five. This score is indicative of "some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 34 (4th ed. 2000).

Dr. Jamerson also completed a medical source statement. (Tr. 197-203). He noted that plaintiff suffered from delusions and hallucinations, emotional withdrawal, marked difficulties in maintaining social functioning, deficiencies of concentration, repeated episodes of deterioration or decompensation, generalized anxiety, and recurrent severe panic attacks. He then indicated that plaintiff had marked restrictions regarding activities of daily living, extreme difficulty maintaining social functioning, often experienced deficiencies of concentration, and would continually experience episodes of deterioration or decompensation. (Tr. 203).

While we are aware that initial assessments seemed to indicate that plaintiff was malingering or over reporting his symptoms, we note that more recent records indicate that plaintiff was actually suffering from a mental impairment. (Tr. 171, 194-203). Dr. Singhal was hesitant to prescribe any medication for plaintiff's condition, but after reviewing several of plaintiff's counseling progress notes, he diagnosed plaintiff with depression. (Tr. 175, 178). He noted that depressive and anxiety symptoms were prevalent and consistent, and prescribed Prozac. Approximately three months later,

9

Dr. Adebogun added Depakote and Geodon to plaintiff's medication regimen. (Tr. 171). As stated above, these are relatively strong medications used to treat schizophrenia and manic and mixed episodes associated with bipolar disorder. The records clearly indicate that plaintiff was experiencing problems with "explosive moods," and indicated that he had been involved in a number of altercations. In fact, plaintiff told Dr. Adebogun that he always carried a pocketknife in his hand or pocket. (Tr. 171).

We also note that Dr. Jamerson diagnosed plaintiff with paranoid schizophrenia, panic attacks with agoraphobia, and a learning disorder. (Tr. 203). In addition, he indicated that plaintiff had marked restrictions in activities of daily living, experienced extreme difficulty maintaining social functioning, often experienced deficiencies of concentration, and would continually experience episodes of deterioration or decompensation. (Tr. 203). Given plaintiff's symptoms and the medications prescribed to treat his condition, we believe that remand is necessary to allow the ALJ to reconsider the evidence concerning plaintiff's mental condition.

After reviewing the entire record, we are also concerned that the ALJ relied on the psychological examination of Dr. Morgan to conclude that plaintiff's impairment was non-severe. We note that the opinion of a consulting physician who examined the plaintiff once, or not at all, does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). This is especially true in this instance, where the notes of plaintiff's treating physicians indicate that plaintiff was actually suffering from a significant impairment, and the ALJ has failed to explain his reasons for disregarding this evidence. Whether the ALJ grants a treating physician's

10

opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2); *see also* SSR 96-2p; *See Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of March 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)